## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) |
| | ) Chapter 11 |
| AH LIQUIDATION, INC. *et al.* | ) |
| | ) Case No. 21-10883 (CTG) |
| Debtors. | ) |
| | ) (Jointly Administered) |
| DRIVETRAIN LLC, in its capacity as | ) |
| LIQUIDATING TRUSTEE for the | ) Adv No. 22-50392-CTG |
| LIQUIDATING TRUST OF AH | ) |
| LIQUIDATION, INC., AH IP | ) |
| LIQUIDATION, INC., RM LIQUIDATION, | ) |
| INC., BP LIQUIDATION, INC., and QAA | ) |
| LIQUIDATION, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| DAVID FANN, PAUL COX, STEPHEN | ) |
| WOODY, HUMBERTO ANTUNES, and | ) |
| JOSEPH MCGUIRE, | ) |
| | ) |
| Defendants. | ) |

**OPENING BRIEF IN SUPPORT OF HUMBERTO ANTUNES' MOTION TO DISMISS PLAINTIFF'S
COMPLAINT PURSUANT TO RULES 12(B)(5) AND 12(B)(6)**

# TABLE OF CONTENTS

Page

I.     INTRODUCTION AND SUMMARY OF THE ARGUMENT ........................................ 1

II.    NATURE AND STAGE OF THE PROCEEDING.......................................................... 2

III.   SUMMARY OF FACTS AND ALLEGATIONS ............................................................. 4

     A.     The Exculpatory Provision in Avadim's Certificate of Incorporation.................... 4

     B.     Humberto Antunes ................................................................................................... 4

     C.     Summary of the Complaint's Allegations................................................................ 6

IV.   ARGUMENT AND AUTHORITIES ............................................................................... 8

     A.     The Court Should Dismiss the Claims Against Antunes under Rule 12(b)(5). ...... 8

           1.     The Trustee cannot circumvent the Hague Convention by relying
                 on Bankruptcy Rule 7004. ........................................................................... 8

           2.     The Trustee must serve Antunes through the Hague Convention. ............. 9

     B.     In the Alternative, the Court Should Dismiss All Claims Against Antunes
          under Rule 12(b)(6)................................................................................................ 10

           1.     Legal standard: The Complaint must plead specific facts against
                 Antunes individually that support a non-exculpated claim...................... 10

           2.     The Complaint lacks any specific allegations supporting a non-
                 exculpated claim. ...................................................................................... 12

                 a.     Count I:  The breach of fiduciary duty claim fails........................ 15

                 b.     Count II: The corporate waste claim fails.................................... 19

                 c.     Count III: The aiding and abetting breach of fiduciary duty
                      claim fails.................................................................................... 21

                 d.     Count IV: The unjust enrichment claim fails............................... 21

     C.     The Complaint should be dismissed with prejudice. ........................................... 22

V.    CONCLUSION............................................................................................................. 23

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Advance Watch Co., Ltd.,*
    587 B.R. 598 (Bankr. S.D.N.Y. 2018) ........................................................................9

*Adverio Pharma GmbH v. Alembic Pharm. Ltd.,*
    No. CV 18-73-LPS, 2019 WL 581618 (D. Del. Feb. 13, 2019) .............................12

*In re Affiliated Computer Services, Inc. Shareholders Litig.,*
    No. CIV.A. 2821-VCL, 2009 WL 296078 (Del. Ch. Feb. 6, 2009) ........................15

*Am. Inst. for Chartered Prop. Cas. Underwriters v. Potter,*
    No. CV 19-1600-CFC-SRF, 2021 WL 431475 (D. Del. Feb. 8, 2021) ...................12

*Am. Institue for Chartered Prop. Cas. Underwriters v. Potter,*
    No. CV 19-1600-CFC, 2021 WL 1152982 (D. Del. Mar. 26, 2021) ......................12

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) ...............................................................................................10

*In re Bayou Steel BD Holdings, L.L.C.,*
    642 B.R. 371 (Bankr. D. Del. 2022) .......................................................................11

*Behrmann v. Brandt,*
    No. CV 19-772-RGA, 2020 WL 4432536 (D. Del. July 31, 2020)...................11, 12

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007) ...............................................................................................10

*Beneficial Cal., Inc. v. Villar (In re Villar),*
    317 B.R. 88 (9th Cir. BAP 2004) .............................................................................8

*In re Burlington Coat Factory Sec. Litig.,*
    114 F.3d 1410 (3d Cir. 1997)...................................................................................22

*CAE Inc. v. Gulfstream Aerospace Corp.,*
    203 F. Supp. 3d 447 (D. Del. 2016) (Stark, J.) ......................................................10

*Caspian Select Credit Master Fund Ltd. v. Gohl,*
    No. CV 10244-VCN, 2015 WL 5718592 (Del. Ch. Sept. 28, 2015)..................21, 22

*Cephalon, Inc. v. Sun Pharm. Indus., Inc.,*
    No. CIV.A. 11-5474, 2011 WL 6130416 (D.N.J. Dec. 7, 2011) ..............................8

*In re Citigroup Inc. S'holder Derivative Litig.*,
   964 A.2d 106 (Del. Ch. 2009)....................................................................15, 17, 18

*Continuing Creditors' Comm. of Star Telecommunications, Inc. v. Edgecomb*,
   385 F. Supp. 2d 449 (D. Del. 2004)..........................................................13, 15

*In re Cornerstone Therapeutics Inc, Stockholder Litig.*,
   115 A.3d 1173 (Del. 2015) .......................................................................11, 12

*In re Dell Techs. Inc. Class V S'holders Litig.*,
   2020 WL 3096748 (Del. Ch. June 11, 2020) .........................................................12

*In re Essar Steel Minnesota LLC*,
   No. 16-11626 (BLS), 2019 WL 2246712 (Bankr. D. Del. May 23, 2019)............................10

*In re Ezcorp Inc. Consulting Agreement Derivative Litig.*,
   No. CV 9962-VCL, 2016 WL 301245 (Del. Ch. Jan. 25, 2016) ...........................................21

*In re Fedders North America Inc.*,
   405 B.R. 527 (Bankr. D. Del. 2009) ................................................................16

*In re Foreign Econ. Indus. Bank Ltd., "Vneshprombank" Ltd.*,
   607 B.R. 160 (Bankr. S.D.N.Y. 2019)................................................................9

*Genworth Fin., Inc. Consol. Deriv. Litig.*,
   2021 WL 4452338, at *22 (Del. Ch. Sept. 29, 2021). ...........................................12

*In re Glencoe Acquisition, Inc.*,
   No. 12-12071(KG), 2015 WL 3777972 (Bankr. D. Del. June 16, 2015) ...............................9

*Green v. Phillips*,
   No. CIV. A. 14436, 1996 WL 342093 (Del. Ch. June 19, 1996) ...........................................20

*Jones v. James Trading Co. Ltd.*,
   No. CV192674MWFJEMX, 2019 WL 6354392 (C.D. Cal. July 3, 2019) ...............................8

*In re Lear Corp. S'holder Litig.*,
   967 A.2d 640 (Del. Ch. 2008)....................................................................15

*In re Lenox Healthcare, Inc.*,
   319 B.R. 819 (Bankr. D. Del. 2005) ................................................................8, 9

*In re LMI Legacy Holdings, Inc.*,
   No. 13-12098 (CSS), 2017 WL 1508606 (Bankr. D. Del. Apr. 27, 2017), aff'd,
   625 B.R. 268 (D. Del. 2020)....................................................................10, 11, 22

*In re Midway Games Inc.*,
   428 B.R. 303 (Bankr. D. Del. 2010) ................................................................11

*In re: Old Bpsush, Inc.*,
  No. 16-12373 (BLS), 2021 WL 4453595 (D. Del. Sept. 29, 2021)............................15, 16, 20

*Schmidt v. Skolas*,
  770 F.3d 241 (3d Cir. 2014).........................................................................................10

*Shane v. Fauver*,
  213 F.3d 113 (3d Cir. 2000).........................................................................................22

*In re Sols. Liquidation LLC*,
  608 B.R. 384 (Bankr. D. Del. 2019) ...........................................................................16

*Stone v. Ranbaxy Pharm., Inc.*,
  No. JFM-10-CV-08816, 2011 WL 2462654 (S.D.N.Y. June 16, 2011)......................8

*T-Jat Sys. 2006 Ltd. v. Expedia, Inc.*,
  2017 WL 896988 (D. Del. Mar. 7, 2017) ....................................................................12

*In re Ultrasonics, Inc.*,
  269 B.R. 856 (Bankr. D. Idaho 2001)...........................................................................8

*In re USDigital, Inc.*,
  443 B.R. 22 (Bankr. D. Del. 2011) .......................................................................15, 21

*In re Vivaro Corp.*,
  541 B.R. 144 (Bankr. S.D.N.Y. 2015)..........................................................................9

*Volkswagenwerk Aktiengesellschaft v. Schlunk*,
  486 U.S. 694 (1988)......................................................................................................10

*White v. Panic*,
  783 A.2d 543 (Del. 2001) .......................................................................................19, 20

*Wildcat Licensing WI LLC v. Audi AG*,
  No. CV 19-833-MN-JLH, 2020 WL 5798547 (D. Del. Sept. 29, 2020) ......................8

**Statutes**

8 DEL. C. § 102(b)(7)...........................................................................................................11

**Other Authorities**

FED. R. BANKR. P. 7012 .......................................................................................................10

FED. R. BANKR. P. 7004 ....................................................................................................8, 9

FED. R. CIV. P. 4 .............................................................................................................9, 10

FED. R. CIV. P. 8 ..................................................................................................................12

iv

FED. R. CIV. P. 12 ............................................................................................................... *passim*

Defendant Humberto Antunes ("Antunes") submits this Opening Brief in Support of his Motion to Dismiss ("Motion") Plaintiff's Complaint ("Complaint") pursuant to Rules 12(b)(5) and 12(b)(6).

## I.    INTRODUCTION AND SUMMARY OF THE ARGUMENT

On July 15, 2022, Drivetrain, LLC (the "Trustee"), filed this adversary proceeding against five former officers and directors of Avadim Health, Inc. ("Avadim"): three officer-directors (David Fann, Paul Cox, and Stephen Woody), one officer (Joseph McGuire, CFO), and one outside/independent director (Humberto Antunes).[1]

Although the Complaint alleges a litany of specific improper actions, conduct, and transactions involving Fann, Cox, Woody, and McGuire, the Complaint alleges literally *no facts* against Antunes individually. The Trustee's failure to plausibly plead its claims against Antunes would require dismissal under any circumstance. But here, the Complaint's lack of any specificity regarding Antunes' conduct is particularly troubling because Avadim's corporate charter broadly exculpates Antunes from liability arising from his role as a director. As a result, the Trustee has the additional and high burden to plead sufficient facts showing that Antunes himself, not the defendants as a group, committed conduct that was intentionally unlawful, fraudulent, in bad faith, or in his own self-interest. Because the Complaint utterly fails to meet this burden and there is nothing to suggest amendment can cure this deficiency, the Court should dismiss all claims against Antunes with prejudice.

In addition to filing a deficient Complaint, the Trustee attempted to circumvent international law and the requirements of the Hague Convention by purporting to mail copies of the Complaint to Antunes—a Swiss citizen with no usual place of abode or regular place of

---

[1] These individuals will be referenced by their last names throughout this Brief.

business in the United States—at an address in New York City associated with a company in which Antunes has an interest (but which has no relation to this case). Antunes does not live at the New York address or regularly conduct business there. The Federal Rules of Bankruptcy Procedure ("Bankruptcy Rule(s)") do not permit the Trustee to circumvent the service requirements of the Hague Convention. Accordingly, even without reaching the merits of the Trustee's claims, the Court should dismiss (or alternatively stay) the claims until the Trustee serves Antunes in accordance with the requirements of the Federal Rules of Civil Procedure, the Bankruptcy Rules, and the Hague Convention.

## II.    NATURE AND STAGE OF THE PROCEEDING

On May 31, 2021 (the "Petition Date"), the Debtors[2] filed voluntary petitions in this Court requesting relief under Chapter 11 of the Bankruptcy Code. On October 21, 2021, the Debtors filed the Second Amended Joint Combined Chapter 11 Plan of Liquidation and Disclosure Statement for AH Liquidation, Inc. and Certain Affiliate Debtors[3] (the "Combined Plan and Disclosure Statement"). The Combined Plan and Disclosure Statement was approved by the Court on November 5, 2021[4] ("Confirmation Order'"), and became effective on November 15, 2021.[5] Pursuant to the Confirmation Order, the Trustee was approved as liquidating trustee of the liquidating trust.

The Trustee filed the Complaint on July 15, 2022. Thereafter, the Trustee attempted to serve Antunes by mailing a copy of the Summons and Complaint to **757** Third Avenue, New York,

---

[2] The Debtors are identified and defined in the Complaint as including, AH Liquidation, Inc. (f/k/a Avadim Health, Inc.), AH IP Liquidation, Inc. (f/k/a Avadim Health IP, Inc.), RM Liquidation, Inc. (f/k/a Relion Manufacturing, Inc.), BP Liquidation Corp. (f/k/a Bionome Properties Corp), QAA Liquidation, Inc. (f/k/a Quality Assurance Associates, Inc.) (collectively, the "Debtors" or the "Company").

[3] D.I. 380.

[4] D.I. 401.

[5] D.I. 401, 403.

NY 10017 ("757 Third Ave."), which the Trustee incorrectly believed was an office of Gore Range

Capital, LLC ("Gore Range") in New York. The Trustee intended to mail the pleadings to **767**

Third Avenue, 7th Floor New York, NY 10017 ("767 Third Ave."), an address previously

identified on the website for Gore Range. Gore Range is not a party to this action and has no

interest in Avadim. Although Antunes has an interest in Gore Range, Antunes does not have an

office or regularly use the New York Office.[6] Antunes never received the package containing the

Summons and Complaint purportedly mailed by the Trustee to 757 Third Ave.[7] and an Entry of

Default was entered against Antunes.[8]

On October 31, 2022, the Trustee and Antunes entered into a Joint Stipulation to Vacate

Entry of Default ("Stipulation").[9] In the Stipulation, Antunes reserved all rights, including the right

to contest service of process.[10] Nevertheless, the parties agreed (without waiving service of process

or Antunes's right to assert that the mailing of such package is insufficient service of process on

him) to treat the package containing the copies of the Summons and Complaint as though it was

mailed to 767 (not 757) Third Ave.[11]

---

[6] D.I. 8; Ex. B, Antunes Dec. ¶ 9.

[7] Ex. B, Antunes Dec. ¶ 10.

[8] D.I. 11.

[9] D.I. 22.

[10] *See id.*

[11] *See id.*

### III.    SUMMARY OF FACTS AND ALLEGATIONS

**A.    The Exculpatory Provision in Avadim's Certificate of Incorporation**

Avadim Technologies, Inc. ("ATI") was originally incorporated in August 2013 under the laws of the State of Wyoming.[12] In August 2018, ATI was converted to a Delaware corporation, and in September 2018 changed its name to "Avadim Health, Inc." ("Avadim").[13]

On October 5, 2018, Avadim filed an Amended and Restated Certificate of Incorporation ("Certificate of Incorporation") with the Delaware Secretary of State.[14] The Certificate of Incorporation expressly exculpates its directors from liability for *all claims* except those arising from certain misconduct:

> To the fullest extent permitted by applicable law, no director or officer of the Corporation shall be personally liable to the Corporation or any of its stockholders for damages for breach of fiduciary duty as a director or officer involving any act or omission of any such director or officer; provided, however, that the foregoing provision shall not eliminate or limit the liability of a director or officer: (i) for acts or omissions which involve intentional misconduct, fraud, or a knowing violation of law, or (ii) the payment of dividends in violation of Section 174 of the DGCL; (iii) for any breach of the director's duty of loyalty, as defined by the DGCL, to the Corporation or its shareholders; or (iv) for any transaction from which the officer or director derived an improper personal benefit.[15]

**B.    Humberto Antunes**

Antunes served as an independent director on Avadim's Board of Directors ("Board") from February 2017 until he resigned effective June 2, 2020.[16] Before joining the Board, Antunes served

---

[12] Complaint at ¶ 18.

[13] *See id; see* Exs. A-1, A-2.

[14] Complaint at ¶ 18*; see* Ex. A-1. The same exculpatory provision is contained in the Certificate of Incorporation of Avadim Technologies, Inc. In September 2018, Avadim Technologies, Inc's name was changed to Avadim, which is now known as AH Liquidation, Inc.

[15] *See* Ex. A-1, p. 6. Hereinafter referenced as the "Exculpatory Provision." The Certificate of Incorporation filed on August 2, 2018 by ATI (before it converted to Avadim) contains an identical exculpatory provision. *See* Ex. A-2.

[16] Complaint at ¶ 46; Ex. B, Antunes Dec. ¶ 3.

as president of Galderma and Chief Executive Officer of Nestlé Skin Health.[17] Antunes never served as an officer or employee of Avadim.[18]

Antunes has lived in Europe since 2004 and in Switzerland since 2010.[19] He is a Swiss citizen and permanent resident of Switzerland.[20] Antunes does not have a principal place of business or usual place of abode in the United States.[21] Antunes periodically travels to the United States to visit family and for business meetings, but his permanent residence is in Switzerland.[22] He operates his business from his home in Switzerland.[23] Switzerland is also where, among other things, he pays taxes, contributes to social security, has a driver's license, votes, and visits his family doctor.[24]

Gore Range is an investment entity in which Antunes has an interest.[25] Gore Range has no relevance to this case. In the past, Gore Range identified 767 Third Ave. as an address on its website.[26] The 767 Third Ave. address relates to a single shared office space that Gore Range subleased from another company.[27] Gore Range does not have employees at this address.[28]

---

[17] Complaint at ¶ 47; Ex. B, Antunes Dec. ¶ 3.

[18] Ex. B, Antunes Dec. ¶ 4.

[19] *Id.* at ¶ 6.

[20] *Id.*

[21] *Id.*

[22] *Id.*

[23] *Id.*

[24] *Id.*

[25] *Id.* at ¶ 7.

[26] *See id.* at ¶ 8.

[27] *See id.*

[28] *See id.*

Antunes has never regularly conducted business at 767 Third Ave.[29] Antunes has never lived at this address, does not accept mail at this address, and does not regularly conduct business there.[30]

## C.    Summary of the Complaint's Allegations

The Complaint recites a series of alleged improper acts by four Avadim officers/directors, Fann, Cox, Woody, and McGuire, but contains no allegation of any specific act or omission by Antunes. The allegations in the Complaint fall into two categories: (i) conduct by the officer-directors (Fann, Cox, Woody) and the CFO (McGuire), which comprises the bulk of the Complaint, and (ii) generalized conduct by the Board *as a group*.

The allegations against Fann, Cox, Woody, and McGuire include that:

- Fann pressured McGuire to pay an improper bonus in 2018;[31]

- Fann failed to disclose to the Board the material changes made to the Amended S-1;[32]

- McGuire approved reimbursement of Fann's country club membership;[33]

- Fann and Woody refused to implement a 2021 directive issued by Board Chairman, Charles Owen (*after* Antunes resigned from the Board) to reduce salaries for upper management by 10%;[34]

- Fann spent hundreds of thousands of dollars on ineffective marketing;[35] and

- Fann and McGuire conspired to improperly manipulate Avadim's financials, and during McGuire's tenure, Avadim made significant accounting errors.[36]

---

[29] *See id.*

[30] *See id.* at ¶ 9.

[31] Complaint at ¶ 50.

[32] *Id.* at ¶¶ 60-73.

[33] *Id.* at ¶ 74.

[34] *Id.* at ¶ 77.

[35] *Id.* at ¶ 85.

[36] *Id.* at ¶¶ 78-81.

*Importantly, the Complaint does not state or suggest Antunes participated in, approved, or knew about these events. To the contrary, the Complaint alleges the independent directors, including Antunes, had no knowledge of these actions.*[37]

The Complaint includes general allegations against the Board as whole (not Antunes specifically), including:

- Failure to discover unfavorable information about Cox and Fann's business and personal backgrounds until Avadim's anticipated IPO (the Complaint concedes the Board had no prior knowledge);[38]

- Directing Cox to resign his position on the Board and as Vice President of Avadim on the eve of the IPO and authorizing the disclosure in the S-1 that Fann would resign concurrently with the completion of the Company's IPO (which allegedly contributed to the failed IPO);[39]

- Failure to prohibit Avadim's employment of executive's family members;[40] and

- "Defendants knew or should have known [Avadim] could not service the Hayfin financing transaction."[41]

The Complaint does not allege or contain facts that support that these Board decisions were intentionally unlawful, fraudulent, or in bad faith. Moreover, the Complaint levies no allegations against Antunes individually, much less any allegation that Antunes committed any act or omission falling outside the protections of Avadim's Exculpatory Provision.

---

[37] *See e.g.*, Complaint ¶ 50 ("unbeknownst to AHI's other Board members"); ¶ 54 ("None of these proceedings had been previously disclosed by Fann or Cox to the Board"); ¶ 59 ("these late and significant disclosures;"); ¶ 61 ("Unbenknownst to the Board"); ¶ 62 ("Fann failed to disclose the Material Changes to the Board"); ¶ ("willful withholding of information from the members of the Board"); ¶ 66 (Fann "not contemplating a Board meeting to review it"); ¶ 71 ("multiple Board members confirmed they were unaware of the Material Changes"); ¶ 74 ("Fann's reimbursement was [] not disclosed in writing to the Board").

[38] *Id.* at ¶¶ 26-42, 54.

[39] *Id.* at ¶ 56, 57.

[40] *Id.* at ¶ 75.

[41] *Id.* at ¶ 83.

## IV.    ARGUMENT AND AUTHORITIES

### A.    The Court Should Dismiss the Claims Against Antunes under Rule 12(b)(5).

### 1.    The Trustee cannot circumvent the Hague Convention by relying on Bankruptcy Rule 7004.

Pursuant to Rule 12(b)(6), claims against a defendant who has not been properly served with process should be dismissed or, at a minimum, stayed until the defendant is properly served.[42] Bankruptcy Rule 7004 authorizes service by mail in certain limited circumstances—none of which are present here.  In an adversary proceeding "service may be made within the United States by first class mail postage prepaid…[u]pon an individual… by mailing a copy of the summons and complaint to the individual's dwelling house or usual place of abode or to the place where the individual regularly conducts a business or profession."[43] "Not every address where a defendant has at one time or for some purpose conducted business will necessarily suffice. The use of the adjective 'regularly' connotes more than that."[44] The plaintiff has the burden of proof to show proper service by a preponderance of the evidence.[45]

Antunes has lived in Europe since 2004 and in Switzerland since 2010. He is a Swiss citizen and permanent resident of Switzerland.[46] Antunes does not have a principal place of business or usual place of abode in the United States.[47] Antunes periodically travels to the United States to

---

[42] *See, e.g., Cephalon, Inc. v. Sun Pharm. Indus., Inc.*, No. CIV.A. 11-5474, 2011 WL 6130416, at *1 (D.N.J. Dec. 7, 2011) (finding service insufficient and requiring service through the Hague Convention); *Wildcat Licensing WI LLC v. Audi AG*, No. CV 19-833-MN-JLH, 2020 WL 5798547, at *3 (D. Del. Sept. 29, 2020), report and recommendation adopted, No. CV 19-833 (MN) (JLH), 2020 WL 6060395 (D. Del. Oct. 14, 2020) (same); *Jones v. James Trading Co. Ltd.*, No. CV192674MWFJEMX, 2019 WL 6354392, at *1 (C.D. Cal. July 3, 2019) (same); *Stone v. Ranbaxy Pharm., Inc.*, No. JFM-10-CV-08816, 2011 WL 2462654, at *7 (S.D.N.Y. June 16, 2011) (same).

[43] FED. R. BANKR. P. 7004.

[44] *In re Ultrasonics, Inc.*, 269 B.R. 856, 862 (Bankr. D. Idaho 2001).

[45] *In re Lenox Healthcare, Inc.*, 319 B.R. 819, 821–22 (Bankr. D. Del. 2005) (citing *Beneficial Cal., Inc. v. Villar (In re Villar)*, 317 B.R. 88, 93 (9th Cir. BAP 2004)).

[46] Ex. B, Antunes Dec. ¶ 6.

[47] *Id.*

visit family and for business meetings, but his permanent residence is in Switzerland.[48] He operates his business from his home in Switzerland.[49] Switzerland is also where, among other things, he pays taxes, contributes to social security, has a driver's license, votes, and visits his family doctor.[50]

The mailing of the Complaint to a shared office space leased by Gore Range is not proper service on Antunes under Bankruptcy Rule 7004. It is not a place where Antunes lives or and regularly conducts business in the United States.[51] Antunes does not accept mail at this address and does not regularly conduct business at this office.[52] Indeed, Gore Range does not even have any employees at this address.[53] It is merely space subleased from another company and formerly listed on the Gore Range website.[54]

### 2.    The Trustee must serve Antunes through the Hague Convention.

Because Antunes is a foreign defendant and permanent Swiss citizen and resident, Rule 4(f) requires that Antunes be served through methods authorized by Switzerland under the Hague Convention.[55]    In cases where the Hague Convention applies, the supremacy clause of the

---

[48] *Id.*

[49] *Id.*

[50] *Id.*

[51] *Id.* at ¶¶ 6, 9.

[52] *Id.* at ¶ 8.

[53] *Id.*

[54] *Id.*

[55] In an adversary proceeding, "[s]ervice pursuant to the Hague Convention is mandatory when serving a foreign defendant in a signatory country." *In re Advance Watch Co., Ltd.*, 587 B.R. 598, 602–03 (Bankr. S.D.N.Y. 2018); *In re Vivaro Corp.*, 541 B.R. 144, 146–47 (Bankr. S.D.N.Y. 2015) ("In an adversary proceeding against a foreign defendant, unless the defendant waives service of process, the summons and complaint must be served under Rule 4(f) of the Federal Rules of Civil Procedure []; this process may require service under the Hague Convention…"); *In re Foreign Econ. Indus. Bank Ltd., "Vneshprombank" Ltd.*, 607 B.R. 160, 174–75 (Bankr. S.D.N.Y. 2019) ("Bankruptcy Rule 7004 and Civil Rule 44 require compliance with the Hague Convention where an adversary proceeding seeking in personam jurisdiction over the defendant is commenced against a defendant who resides in a foreign country…"); *see also, In re Glencoe Acquisition, Inc.*, No. 12-12071(KG), 2015 WL 3777972, at *2 (Bankr.

Constitution preempts all inconsistent forms of service.[56] Further, Switzerland has objected to Article 10(a) of the Convention, which specifically prohibits service of judicial documents by mail.[57] Even under the Bankruptcy Rules, mail is not an "internationally agreed means" permitted by Rule 4(f) and the Hague Convention and it is thus expressly prohibited for Swiss defendants.[58]

Because the Trustee has not properly served Antunes through the Hague Convention, the Complaint should be dismissed without prejudice (or, at a minimum stayed) against Antunes until the Trustee serves Antunes consistent with the requirements of the Federal Rules of Civil Procedure, the Bankruptcy Rules of Procedure, international and Swiss law.

**B.     In the Alternative, the Court Should Dismiss All Claims Against Antunes under Rule 12(b)(6).**

      **1.     Legal standard: The Complaint must plead specific facts against Antunes individually that support a non-exculpated claim.**

The Court is familiar with the standards for a motion to dismiss under Rule 12(b)(6), which is made applicable by Bankruptcy Rule 7012(b).[59] In considering a motion to dismiss, courts may consider allegations contained in the complaint, exhibits attached to the complaint, documents integral to the complaint, and matters of public record.[60] As relevant here, Delaware courts

---

D. Del. June 16, 2015) (indicating that service through the Hague Convention is necessary if defendant does not have a principal place of business in the United States); FED. R. CIV. P. 4(f) and 4(h).

[56] *See Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 699 (1988) (the Hague Convention applies where civil litigants have cause to transmit judicial or extrajudicial documents internationally).

[57] Hague Convention, Declarations Reservations, 5(a) ("Switzerland declares that it is opposed to the use in its territory of the methods of transmission provided for in Articles 8 and 10.").

[58] FED. R. CIV. P. 4(f)(1).

[59] *See CAE Inc. v. Gulfstream Aerospace Corp.*, 203 F. Supp. 3d 447, 451-52 (D. Del. 2016) (Stark, J.); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *In re LMI Legacy Holdings, Inc.*, No. 13-12098 (CSS), 2017 WL 1508606, at *3 (Bankr. D. Del. Apr. 27, 2017), aff'd, 625 B.R. 268 (D. Del. 2020).

[60] *See generally e.g.*, *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014); *In re Essar Steel Minnesota LLC*, No. 16-11626 (BLS), 2019 WL 2246712, at *8 (Bankr. D. Del. May 23, 2019) (taking judicial notice of articles of incorporation in determining 12(b)(6) motion to dismiss).

properly may consider exculpatory provisions contained in corporate formation documents in ruling on Rule 12(b)(6) motions to dismiss.[61]

Under section 102(b)(7) of the Delaware General Corporation Code ("DGCL"), a corporation may adopt provisions that eliminate or limit the personal liability of directors.[62] Avadim's Exculpatory Provision insulates its directors and officers from liability for *all claims* except those arising from: (i) "acts or omissions which involve intentional misconduct, fraud, or a knowing violation of law;" (ii) the payment of certain dividends; (iii) any breach of the director's duty of loyalty; or (iv) any transaction from which the director derived an improper personal benefit.[63] "One of the primary purposes of section 102(b)(7) is to encourage directors to undertake risky, but potentially value-maximizing, business strategies, so long as they do so in good faith."[64]

In the *Cornerstone* decision, the Delaware Supreme Court clarified that where a defendant director is protected by such an exculpatory provision, a plaintiff cannot survive a motion to dismiss unless it can plead a "*non-exculpated* claim for breach of fiduciary duty," specifically one alleging a breach of the duty of loyalty against that particular director.[65]  Specifically, a plaintiff pursuing a cause of action against a director must plead *non-exculpated* claims that involve fraudulent, illegal, or bad faith conduct.[66] This requires a particularized showing "that the directors

---

[61] *E.g., Behrmann v. Brandt*, No. CV 19-772-RGA, 2020 WL 4432536, at *1 (D. Del. July 31, 2020), report and recommendation adopted, No. CV 19-772-RGA, 2020 WL 5752389 (D. Del. Sept. 25, 2020) (granting 12(b)(6) motion to dismiss for failing to plead adequate claims in light of exculpatory provision); *In re Bayou Steel BD Holdings, L.L.C.*, 642 B.R. 371, 400 (Bankr. D. Del. 2022) (dismissing certain defendants covered by exculpatory provision under Rule 12(b)(6) and refusing leave to amend, which would be futile); *LMI Legacy Holdings*, 2017 WL 1508606, at *3 (Bankr. D. Del. Apr. 27, 2017).

[62] 8 DEL. C. § 102(b)(7); *In re Midway Games Inc*., 428 B.R. 303, 316 (Bankr. D. Del. 2010), on reconsideration in part (Mar. 19, 2010).

[63] Ex. A-1.

[64] *In re Midway Games Inc*., 428 B.R. 303, 316 (Bankr. D. Del. 2010), on reconsideration in part (Mar. 19, 2010).

[65] *In re Cornerstone Therapeutics Inc, Stockholder Litig*., 115 A.3d 1173, 1182 (Del. 2015).

[66] *Behrmann*, No. CV 19-772-RGA, 2020 WL 4432536, at *1 (D. Del. July 31, 2020).

acted with scienter, *i.e.*, that they had actual or constructive knowledge that their conduct was legally improper."[67]

In addition, conclusory or group allegations are insufficient. To survive a motion to dismiss, a plaintiff must plead a non-exculpated claim against each particular director.[68] "[A]llegations lumping multiple defendants together without providing allegations of individual conduct are [] insufficient to satisfy the notice pleading standard."[69] "Group pleading[s] will not suffice."[70] Delaware courts consistently find group pleadings deficient under Rule 8, warranting dismissal of claims under Rule 12(b)(6).[71]

### 2. The Complaint lacks any specific allegations supporting a non-exculpated claim.

The Complaint alleges four counts against Antunes: (I) breach of fiduciary duty (which encompasses both the duty of care and duty of loyalty); (II) waste of corporate assets; (III) aiding and abetting breach of fiduciary duty (asserted in the alternative); and (IV) unjust enrichment. But factually, the Complaint alleges only ***three*** facts relating to Antunes: that he (i) joined the "Board in February 2017," (ii) previously "served as co-founder of Nestlé Skin Health" and "president

---

[67] *See id.*

[68] *Cornerstone Therapeutics*, 115 A.3d at 1180.

[69] *Adverio Pharma GmbH v. Alembic Pharm. Ltd.*, No. CV 18-73-LPS, 2019 WL 581618, at *6 (D. Del. Feb. 13, 2019) (citing *T-Jat Sys. 2006 Ltd. v. Expedia, Inc.*, 2017 WL 896988, at *7 (D. Del. Mar. 7, 2017)).

[70] *Genworth Fin., Inc. Consol. Deriv. Litig.*, 2021 WL 4452338, at *22 (Del. Ch. Sept. 29, 2021).

[71] *Am. Inst. for Chartered Prop. Cas. Underwriters v. Potter*, No. CV 19-1600-CFC-SRF, 2021 WL 431475, at *5 (D. Del. Feb. 8, 2021), report and recommendation adopted sub nom. *Am. Institue for Chartered Prop. Cas. Underwriters v. Potter*, No. CV 19-1600-CFC, 2021 WL 1152982 (D. Del. Mar. 26, 2021); *Genworth*, 2021 WL 4452338, at *22 (dismissing claims where plaintiffs "resorted to group pleading" by lumping individuals into defined term "Executive Defendants" but failing to include "specific allegations" or "separate claims" against them); *In re Dell Techs. Inc. Class V S'holders Litig.*, 2020 WL 3096748, at *43 (Del. Ch. June 11, 2020) (dismissing director who had a "limited role," finding it "not reasonably conceivable that [the director] could be held liable based on the events described in the complaint").

[of] Galderma;"[72] and (iii) "did not serve as an officer."[73] **Antunes is not mentioned by name**

**elsewhere except in the demands for judgment under each vaguely pled claim in the 23-page,**

**96-paragraph Complaint.**

     *Continuing Creditors' Comm. of Star Telecommunications, Inc. v. Edgecomb* demonstrates

how the Complaint falls short.[74] In that case, two directors, Sciarillo and Messing (among others),

filed motions to dismiss.[75] As to Sciarillo:

> "The Complaint only mentions Sciarillo directly two times. First, it states that []
> Sciarillo was [] CFO, and, second, it contends that Sciarillo assisted Messing with
> the sale of PT–1 to IDT. With respect to the other actions in which Messing
> participated, the Complaint frequently uses the term "his team," which presumably
> includes Sciarillo. The Plaintiff does not allege that Sciarillo received an improper
> benefit from any of the transactions in which the Plaintiff alleges he participated,
> or that he was interested in the transactions in any other way."[76]

The Court dismissed the claims against Sciarillo.  By contrast, the Complaint alleged that Messing

directly benefited from certain financing transactions and submitted fraudulent bills for services

rendered.[77] The Court found that, "[b]ecause Messing is alleged to have received a benefit from

these transactions, which was not received by the shareholders generally, the Plaintiff has pleaded

sufficient facts to support the allegation that Messing was interested in these transactions."[78]

     Here, the Complaint only factually mentions Antunes by name three times, and only to

recite his professional background and the date he joined Avadim's Board. The Trustee has not

alleged a single improper act or omission by Antunes, much less conduct that was intentional,

---

[72] Complaint at ¶ 47.

[73] Complaint at ¶ 25.

[74] 385 F. Supp. 2d 449, 466 (D. Del. 2004).

[75] *See id.*

[76] *See id.*

[77] *See id.* at 467.

[78] *See id.*

fraudulent, in his own self-interest, or in bad faith. Notably, Antunes has not ever received any financial benefit for serving on Avadim's Board (other than worthless stock) and is not alleged to have benefited from any of the transaction(s) alleged to have benefitted other Defendants.[79]

The Complaint provides **no** allegations that ***Antunes*** committed any intentional misconduct, fraud, knowing violation of law, self-dealing, or bad faith that could overcome the Exculpatory Provision. The Trustee's "shotgun" Complaint vaguely asserts causes of action against the "Defendants," which is defined to include Antunes with the other officer-director defendants (Fann, Cox, Woody, and McGuire). At the same time, the Complaint acknowledges that the other Defendants' alleged conduct—which forms the primary basis for the Complaint— was done without the knowledge of the Board.[80]

For each of Counts I-IV, the Trustee alleges no facts and merely incorporates its prior facts by reference. The Counts then simply recount in a conclusory fashion the elements of breach of fiduciary duty, waste, aiding and abetting, and unjust enrichment. Each Count is asserted against "Defendants" as a group, so Antunes is left to guess on what facts the Trustee is basing his claims. Plaintiffs' scant allegations indiscriminately lumping Antunes together with the other "Defendants" are insufficient to state *any* claim for relief against Antunes—and are certainly insufficient to state a *non-exculpated* claim for relief.

---

[79] Ex. B, Antunes Dec. ¶ 9.

[80] *E.g.*, Complaint ¶ 50 ("unbeknownst to AHI's other Board members"); ¶ 54 ("None of these proceedings had been previously disclosed by Fann or Cox to the Board"); ¶ 59 ("these late and significant disclosures;"); ¶ 61 ("Unbeknownst to the Board"); ¶ 62 ("Fann failed to disclose the Material Changes to the Board"); ¶ ("willful withholding of information from the members of the Board"); ¶ 66 (Fann "not contemplating a Board meeting to review it"); ¶ 71 ("multiple Board members confirmed they were unaware of the Material Changes"); ¶ 74 ("Fann's reimbursement was [] not disclosed in writing to the Board").

### a.    Count I:  The breach of fiduciary duty claim fails.

A claim for breach of fiduciary duty encompasses both the duty of care and the duty of loyalty.[81] The trustee's duty of care claim must be dismissed for several reasons.[82] *First*, Avadim's Exculpatory Provision unequivocally releases Antunes from claims for breach of the duty of care.[83] *Second*, the business judgment rule operates as a presumption "that directors making a business decision, not involving self-interest, act on an informed basis, in good faith and in the honest belief that their actions are in the corporation's best interest."[84] "The business judgment rule, however, is not rebutted by Monday morning quarterbacking."[85] *Third*, even without an exculpatory provision, "[a] claim for breach of the duty of care requires a showing of gross negligence which generally requires directors and officers to fail to inform themselves fully and in a deliberate manner."[86] To meet this standard at the pleading stage—even without the additional hurdle of the Exculpatory Provision—the Trustee was required to allege facts that plausibly showed Antunes was "recklessly uninformed or acted outside of the bounds of reason."[87]

Delaware law places a similarly high burden on the Trustee to plead a non-exculpated claim for breach of the duty of loyalty.[88] To maintain a non-exculpated claim for breach of the duty of

---

[81] *Continuing Creditors' Comm. of Star Telecommunications, Inc. v. Edgecomb*, 385 F. Supp. 2d 449, 464 (D. Del. 2004).

[82] *See e.g., In re USDigital, Inc.*, 443 B.R. 22, 44 (Bankr. D. Del. 2011); *In re Lear Corp. S'holder Litig.*, 967 A.2d 640, 652 (Del. Ch. 2008); *In re Citigroup Inc. S'holder Derivative Litig.*, 964 A.2d 106, 112-13 (Del. Ch. 2009).

[83] *In re USDigital, Inc.*, 443 B.R. at 44; *In re Lear Corp.*, 967 A.2d at 652.

[84] *See id.*

[85] *In re Affiliated Computer Services, Inc. Shareholders Litig.*, No. CIV.A. 2821-VCL, 2009 WL 296078, at *10 (Del. Ch. Feb. 6, 2009).

[86] *In re: Old Bpsush, Inc.*, No. 16-12373 (BLS), 2021 WL 4453595, at *8 (D. Del. Sept. 29, 2021) (internal quotations omitted).

[87] *See id.*(internal quotations omitted).

[88] *Old Bpsush,* 2021 WL 4453595, at *11

loyalty, a plaintiff must plead unlawful self-dealing or bad faith conduct.[89] The Delaware Supreme Court has identified examples of conduct that may show bad faith, including when one: (i) "intentionally acts with a purpose other than that of advancing the best interests of the corporation;" (2) "acts with the intent to violate applicable positive law;" or (3) "intentionally fails to act in the face of a known duty to act, demonstrating a conscious disregard for his duties."[90]

The Trustee has failed to plead a non-exculpated claim for breach of fiduciary duty. As mentioned, the Complaint does not recite *any* misconduct by Antunes individually. Moreover, although Count I generally recites legal standards and conclusions, it does not recite any specific facts to support Count I, but instead merely "repeats and re-alleges" earlier-recited facts. Most of those allegations are lodged against the officer-directors (Fann, Cox, Woody, and McGuire). For example, the Complaint alleges:

(i)     Fann coerced McGuire into paying him an improper bonus;

(ii)    Fann intentionally attempted to hide material changes to the S-1 from the Board;

(iii)   Fann obtained reimbursement of his country club membership;

(iv)    Fann and Woody refused to implement a board directive reducing upper management salaries;

(v)     Fann spent hundreds of thousands of dollars on purportedly ineffective marketing; and

(vi)    Fann and McGuire conspired to improperly manipulate Avadim's financials, and during McGuire's tenure, Avadim made significant accounting errors.[91]

---

[89] *See id*; *see also In re Sols. Liquidation LLC*, 608 B.R. 384, 401 (Bankr. D. Del. 2019) (internal quotations omitted).

[90] *Old Bpsush,* 2021 WL 4453595, at *11 (quoting *In re Fedders North America Inc.*, 405 B.R. 527, 539 (Bankr. D. Del. 2009)).

[91] Complaint at ¶ 52, 61-66, 74, 77-81, 85.

*None of these allegations are directed at or involve intentional misconduct by **Antunes**.* Indeed, the Trustee repeatedly concedes that the independent directors had no knowledge of these actions.[92]

While the Complaint includes some general allegations arguably directed to the Board as a whole (not Antunes specifically), there are no facts supporting that the Board acted in bad faith, self-interest, or even gross negligence. For example, the Complaint alleges the Board: (i) failed to discover unfavorable facts about Cox's and Fann's business and personal backgrounds;[93] (ii) directed Cox to resign his positions on the eve of the IPO and authorized the disclosure in the S-1 that Fann would resign concurrently with the completion of the Company's IPO (which allegedly contributed to the failed IPO);[94] (iii) failed to prohibit Avadim's employment of executive's family members;[95] and (iv) knew or should have known that Avadim could not service a debt transaction with a lender entity called Hayfin.[96] Even if these allegations are taken as true, and even if specifically alleged against Antunes (which they are not), none of these assertions meet the Trustee's burden to show intentional misconduct, fraud, knowing violations of law, unlawful self-dealing, or bad faith by Antunes.

The *Citigroup* decision is instructive. The claims in *Citigroup* were based on the directors' alleged failure to properly monitor Citigroup's business risk related to its exposure to the subprime

---

[92] *See* Sec. III.C; *See e.g.*, Complaint ¶ 50 ("unbeknownst to AHI's other Board members"); ¶ 54 ("None of these proceedings had been previously disclosed by Fann or Cox to the Board"); ¶ 59 ("these late and significant disclosures;"); ¶ 61 ("Unbenknownst to the Board"); ¶ 62 ("Fann failed to disclose the Material Changes to the Board"); ¶ ("willful withholding of information from the members of the Board"); ¶ 66 (Fann "not contemplating a Board meeting to review it"); ¶ 71 ("multiple Board members confirmed they were unaware of the Material Changes"); ¶ 74 ("Fann's reimbursement was [] not disclosed in writing to the Board").

[93] *Id.* at ¶¶ 26-42, 54.

[94] *Id.* at ¶ 56, 57.

[95] *Id.* at ¶ 75.

[96] *Id.* at ¶ 83.

mortgage market in the early 2000s.[97] The directors were protected by an exculpatory provision.[98]

The 86-page Complaint included allegations relating to the directors' failure to adequately oversee

and manage Citigroup's exposure and failing to ensure the company's financial reporting and other

disclosures were thorough and accurate.[99] The plaintiffs did not allege any interested transactions

and relied on a bad-faith theory of liability.[100] The court found the allegations insufficient:

> The [allegations] are not evidence that the directors consciously disregarded their duties or otherwise acted in bad faith; at most they evidence that the directors made bad business decisions...***Plaintiffs fail to plead 'particularized facts*** suggesting that the Board was presented with 'red flags' alerting it to potential *misconduct'* at the Company. That the director defendants knew of signs of a deterioration in the subprime mortgage market, or even signs suggesting that conditions could decline further, is not sufficient to show that the directors were or should have been aware of any *wrongdoing* at the Company or were consciously disregarding a duty somehow to prevent Citigroup from suffering losses...*Indeed, plaintiffs' allegations do not even specify how the board's oversight mechanisms were inadequate or how the director defendants knew of these inadequacies and consciously ignored them.*[101]

In dismissing the claims, the Court found the Complaint's "general ipse dixit syllogisms"

insufficient to survive the defendants' motion to dismiss the complaint, and noted that the

"plaintiffs seem to hope the Court will accept the conclusion that since the Company suffered large

losses…the directors must have breached their fiduciary duties in allowing such losses."[102]

Even setting aside that the Complaint's accusations about the Board's conduct are

insufficient to impute Antunes individually, the Trustee's allegations amount to nothing more than

second-guessing board decisions that the Trustee claims harmed Avadim. That is not sufficient.

---

[97] *In re Citigroup Inc.*, 964 A.2d at 112-13.

[98] *See id.* at 125-26.

[99] *See id.* at 114-15.

[100] *See id.*

[101] *See id.* at 128 (emphasis added).

[102] *See id.*

Even read in the light most favorable to the Trustee, the Complaint has not adequately alleged any non-exculpated breach of fiduciary duty against Antunes that can survive this motion to dismiss. Accordingly, Count I should be dismissed against Antunes.

### b.    Count II: The corporate waste claim fails.

A claim of waste refers to "an exchange of corporate assets for consideration so disproportionately small as to lie beyond the range at which any reasonable person might be willing to trade."[103] "To prevail on a waste claim .... the plaintiff must overcome the general presumption of good faith by showing that the board's decision was so egregious or irrational that it could not have been based on a valid assessment of the corporation's best interests."[104] "[T]he decision must go so far beyond the bounds of reasonable business judgment that its only explanation is bad faith."[105] As summarized by the Court in *White*:

> "Under this standard, a corporate waste claim must fail if there is any substantial consideration received by the corporation, and ... there is a good faith judgment that in the circumstances the transaction is worthwhile. This is so even if the transaction appears, with hindsight, to be unreasonably risky to a reviewing court. As we have observed, courts are ill-fitted to attempt to weigh the adequacy of consideration under the waste standard or, ex post, to judge appropriate degrees of business risk. Thus, absent some reasonable doubt that the [] board proceeded based on a good faith assessment of the corporation's best interests, the board's decisions are entitled to deference under the business judgment rule."[106]

---

[103] *White v. Panic*, 783 A.2d 543, 554 (Del. 2001).

[104] *Id.* at 554 n. 36.

[105] *See id.*

[106] *See id.* at 554.

The standard for pleading corporate waste is "onerous" and "very rarely satisfied."[107] Here, the Trustee's pleading burden is even more onerous because Antunes is protected by the Exculpatory Provision; thus the Trustee must prove the alleged waste involved bad faith or self-dealing.[108]

The Complaint alleges no such conduct against Antunes. In Count II, the Complaint merely regurgitates the elements of a waste claim in a conclusory fashion and references the "above-described acts."[109] It is unclear what actions of any individual defendant the Trustee believes amounts to corporate waste, but it is clear none are sufficient to survive this motion. For example, as to the allegations that Fann received an improper bonus and received reimbursement of his country club membership, the Complaint makes clear this was done without Board knowledge or approval.[110] As to the allegations regarding Avadim entering into a financing transaction with Hayfin (with the hope of facilitating a successful IPO),[111] the Trustee has not alleged any facts that Avadim failed to receive "any substantial consideration," much less any facts that Antunes approved the transaction in bad faith. Indeed as to Antunes, there are no allegations relating to *any* "exchange of corporate assets," let alone an exchange "for consideration so disproportionately small as to lie beyond the range at which any reasonable person might be willing to trade."[112] The waste claim against Antunes fails and should be dismissed with prejudice.

---

[107] *Old Bpsush*, 2021 WL 4453595, at *16.

[108] *Green v. Phillips*, No. CIV. A. 14436, 1996 WL 342093, at *7 (Del. Ch. June 19, 1996) (granting 12(b)(6) motion to dismiss because waste claim was exculpated by exculpatory charter provision).

[109] Complaint at ¶ 98.

[110] Complaint at ¶ 50 ("*unbeknownst to AHI's other Board members*…Fann pressured McGuire to approve a 'down payment' or 'advance' on his not-yet-approved 2018 annual performance bonus in the amount of $129,600.") (emphasis added); Complaint at ¶ 51 ("McGuire and Fann knew or should have known that the 'down payment' was improper and *not approved by the Board*.") (emphasis added); Complaint at ¶ 74 ("While he was employed by AHI, Fann obtained reimbursement for his [country club] membership…Fann's reimbursement was [] *not disclosed* in writing *to the Board*.") (emphasis added).

[111] *Id.* at ¶ 84.

[112] *White*, 783 A.2d at 554.

### c.    Count III: The aiding and abetting breach of fiduciary duty claim fails.

A claim for aiding and abetting has four elements: "(1) the existence of a fiduciary relationship, (2) a breach of the fiduciary's duty, (3) knowing participation in the breach, and (4) damages proximately caused by the breach."[113] As a general rule, "[i]f a defendant has acted in a fiduciary capacity, then that defendant is liable as a fiduciary and not for aiding and abetting."[114]  A defendant "cannot have aided and abetted the same fiduciary duty as he allegedly breached."[115]

Here, the Complaint alleges no facts that Antunes engaged in any wrongful conduct, much less any facts to support that he knowingly participated in any other Defendant's purported breach of fiduciary duty. The only alleged acts or omissions by Antunes were in his fiduciary capacity. The Trustee does not allege facts regarding any actionable conduct by Antunes outside the scope of his alleged fiduciary duty. Antunes cannot have aided and abetted the same fiduciary duty as he allegedly breached. The aiding and abetting count must be dismissed with prejudice.

### d.    Count IV: The unjust enrichment claim fails.

"Unjust enrichment is the unjust retention of a benefit to the loss of another, or the retention of money or property of another against the fundamental principles of justice or equity and good conscience."[116] To survive a motion to dismiss, the Trustee must demonstrate "(1) an enrichment, (2) an impoverishment, (3) a relation between the enrichment and impoverishment, (4) the absence

---

[113] *In re Ezcorp Inc. Consulting Agreement Derivative Litig.*, No. CV 9962-VCL, 2016 WL 301245, at *31 (Del. Ch. Jan. 25, 2016).

[114] *See id.*

[115] *In re USDigital*, 443 B.R. at 47; *see also*, *Caspian Select Credit Master Fund Ltd. v. Gohl*, No. CV 10244-VCN, 2015 WL 5718592, at *13 (Del. Ch. Sept. 28, 2015) (dismissing aiding and abetting claim against officer who owed fiduciary duties to company because "any conduct [] rising to the level of aiding and abetting would be a breach of his own fiduciary duties.").

[116] *Caspian Select Credit Master Fund*, 2015 WL 5718592, at *16.

of justification, and (5) the absence of a remedy provided by law."[117] "At the pleadings stage, an unjust enrichment claim that is entirely duplicative of a breach of fiduciary duty claim—*i.e.*, where both claims are premised on the same purported breach of fiduciary duty—is frequently treated in the same manner when resolving a motion to dismiss."

Count IV alleges no specific conduct upon which the claim is based, but instead merely "repeats and re-alleges" the previously recited facts in a conclusory fashion. The only factual allegations arguably supporting unjust enrichment involve other defendants—not Antunes. For example, the Complaint alleges that Avadim reimbursed Fann for his country club membership and employed Fann's family members. Even if true, the allegations do not show that Antunes obtained any benefit to the detriment of Avadim, and certainly fail to plead any intentional or fraudulent act that would support a non-exculpated claim for unjust enrichment. In fact, Antunes has not receive any compensation for serving as a director.[118]  Because the Complaint contains no allegations against Antunes that would support this claim, it must be dismissed.

## C.    The Complaint should be dismissed with prejudice.

Leave to amend a complaint may be denied where, among other things, amendment would be futile.[119] Futility exists where the complaint, as amended, would fail to state a claim upon which relief could be granted and would be immediately subject to dismissal.[120] Here, all of the asserted claims should be dismissed because the Trustee has not pled (and cannot plead) any facts that Antunes engaged in any intentional misconduct, fraud, knowing violation of the law, self-dealing, or breach of the duty of loyalty, bad faith that would plausibly support a non-exculpated claim.

---

[117] *See id.*

[118] Ex. B, Antunes Dec. ¶ 9.

[119] *Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000).

[120] *LMI Legacy Holdings*, 625 B.R. at 291 (citing *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997)).

Since the Trustee cannot plead non-exculpated claims in accordance with Delaware law, amendment would be futile.

## V.    CONCLUSION

For the foregoing reasons, Humberto Antunes respectfully requests the Court dismiss the Complaint against him with prejudice.

Dated:  December 9, 2022
      Wilmington, Delaware

**CHIPMAN BROWN CICERO & COLE, LLP**

*/s/ William E. Chipman, Jr.*
William E. Chipman, Jr. (No. 3818)
Paul D. Brown (No. 3903)
1313 North Market Street, Suite 5400
Wilmington, Delaware 19801
Telephone:    (302) 295-0191
Facsimile:    (302) 295-0199
Email:    chipman@chipmanbrown.com
      brown@chipmanbrown.com

- and -

**MUNCK WILSON MANDALA LLP**
Michael C. Wilson (*Pro Hac Vice* Forthcoming)
Carolyn R. Raines (*Pro Hac Vice* Forthcoming)
Julie Christensen (*Pro Hac Vice* Forthcoming)
12770 Coit Road, Suite 600
Dallas, Texas 75251
Telephone:    (972) 628-3600
Facsimile:    (972) 628-3616
Email:    mwilson@munckwilson.com
      craines@munckwilson.com
      jchristensen@munckwilson.com

*Counsel for Defendant Humberto Antunes*